IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HELEN ANNETTE RODGERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-22-CV-286-SPS |
| ) | |
| MARTIN O'MALLEY,[1] ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

The claimant Helen Annette Rodgers requests judicial review pursuant to 42 U.S.C. § 405(g) of the denial of benefits by the Commissioner of the Social Security Administration. She appeals the Commissioner's partially unfavorable decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled prior to February 6, 2022. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted for Kilolo Kiakazi as the Defendant in this action.

engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

### Claimant's Background

Claimant was born on February 7, 1967, and was 40 years old on the alleged disability onset date. (Tr. 276, 291). She was 55 years old at the time of the administrative hearing on April 4, 2022. (Tr. 704). She has completed high school and has past work experience as a co-owner of a construction company, sandwich maker, food salesclerk, cook at a nursing home, and as a cook for the elderly. Claimant alleges she has been unable to work since her onset date of May 10, 2007. (Tr. 233-237, 238-242, 302-307).

### Procedural History

Claimant applied for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act in August 2015, alleging disability beginning in May 2007. (Tr. 10, 66, 76, 88, 104, 233). Claimant's application was denied initially and on reconsideration, and then in November 2017 after a hearing before an ALJ. (Tr. 7–31, 66–86, 88–119). Claimant asked the agency's Appeals Council to review the ALJ's decision, and it denied her request, making the ALJ's decision the Commissioner's final decision. (Tr. 1). *See* 20 C.F.R. § 404.981.

Thereafter, Claimant filed a civil action. Ultimately, upon joint motion by Claimant and the Commissioner, the United States Court of Appeals for the Tenth Circuit remanded Claimant's case for further proceedings in light of *Carr v. Saul*, 141 S. Ct. 1352 (2021), which addressed an Appointment's Clause issue. (Tr. 801). Upon remand, Claimant received another hearing before an ALJ, who found that she was disabled as of February 2022, but otherwise denied Claimant's claim before that time via written decision in June 2022. (Tr. 664–91). Claimant then filed this action, over which the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

### Decision of the Administrative Law Judge

In the June 2, 2022, decision, the ALJ made his decision at step five of the sequential evaluation. (Tr. 660-703). As relevant here, at step two, the ALJ found that Claimant had severe

impairments, including "coronary artery disease, status post history of non-ST elevation myocardial infarction (NSTEMI) with stenting in 2007; hypertension; hyperlipidemia; diffuse degenerative changes of the lumbar spine with severe disc space narrowing at L5-S1; multilevel degenerative facet arthropathy of the cervical spine; major depressive disorder; generalized anxiety disorder." (Tr. 674-675). The ALJ also found that Claimant had several nonsevere impairments, including "GERD, history of stomach ulcers, hiatal hernia, Raynaud's syndrome, mild degenerative arthritis of the bilateral hands, degenerative arthritis of the bilateral feet, and hypertrophy of the right lingual tonsil." *Id*. Between steps three and four, the ALJ assessed Claimant's residual functional capacity (RFC), finding that she could perform light work, with the following limitations:

> occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and crawling; frequent reaching, handling, and fingering bilaterally; and avoidance of frequent exposure to dust, odors, fumes, pulmonary irritants, unprotected heights, and dangerous moving machinery. She can understand, remember, and carry out simple tasks with routine supervision. She can concentrate, pace, and persist for extended periods with routine work breaks. She can relate to supervisors, coworkers, and the general public on a superficial work basis. She can respond appropriately to changes in a routine work setting.

(Tr. 675). At step five, the ALJ found based on vocational expert (VE) testimony that there were jobs existing in significant numbers in the national economy that Claimant could perform prior to February 6, 2022. (Tr. 690, 741–46). Accordingly, the ALJ found that Claimant was not disabled prior to that time, but also found that she was disabled as of February 6, 2022, when her age category changed. (Tr. 691).

## Review

The undersigned Magistrate Judge first addresses Claimant's assertion the ALJ's RFC assessment is not supported by substantial evidence. Claimant bears the burden of showing that limitations should be included in her RFC assessment. *See Howard v. Barnhart*, 379 F.3d 945, 948-49 (10th Cir. 2004). The ALJ found that Claimant had the RFC to perform a range of light work but did not establish greater limitations. (Tr. 675). In reaching that conclusion, the ALJ found that Claimant's reported symptoms were inconsistent with other evidence and evaluated the medical source statements. (Tr. 675-680). Further, the ALJ compared the Claimant's RFC with the physical and mental demands of her past relevant work and found:

> Based on the testimony of the vocational expert, I conclude that, prior to the established onset date of disability, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. Prior to February 6, 2022, a finding of "not disabled" is therefore appropriate under the framework of the above-cited rules in the Medical-Vocational Guidelines.
>
> 11. Beginning on February 6, 2022, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966). Beginning on the date the claimant's age category changed, considering the claimant's age, education, and work experience, a finding of "disabled" is reached by direct application of Medical-Vocational Rule 202.06.
>
> 12. The claimant was not disabled prior to February 6, 2022, but became disabled on that date and has continued to be disabled through the date of this decision. Her disability is expected to last twelve months past the onset date (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 691). The Court finds substantial evidence supports the ALJ's findings.

"Since the purpose of the [symptom] evaluation is to help the ALJ assess a claimant's RFC, the ALJ's [symptom] and RFC determinations are inherently intertwined." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009). Claimant claimed to experience debilitating symptoms including complaints of pain in her neck and back, and every joint in her body. (Tr. 676). However, the ALJ found that these reported symptoms were inconsistent with other evidence. (Tr. 691). Further, the ALJ considered Plaintiff's subjective complaints in light of her continued part-time employment. *See* 20 C.F.R. § 404.1571 ("Even if the work you have done [during a period of claimed disability] was not substantial gainful activity, it may show that you are able to do more work than you actually did."). Indeed, the ALJ explained that Plaintiff's work duties included carrying items and being on her feet all the time. (Tr. 682, 685, citing Tr. 270, 273). This finding is due "particular deference" by the Court. *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002).

Specifically, the ALJ found that objective medical evidence did not support the degree of limitation Claimant alleged. *Id. See* 20 C.F.R. § 404.1529(c)(4) ("[W]e will evaluate your statements in relation to the objective medical evidence."). The RFC is an administrative finding, based on all relevant evidence, that an ALJ makes as to the most a claimant can do despite her impairments. *See* 20 C.F.R. §§ 404.1545(a)(1), (a)(3), 404.1546(c).

The ALJ considered the evidence of Claimant's physical impairments and found that she could perform only a range of light work. (Tr. 675). The ALJ acknowledged Claimant's reports that she had heart issues, including a history of heart attack and arterial stents, which she reported caused her to have lightheadedness and fatigue. (Tr. 676). The ALJ further acknowledged Claimant's report that when she had episodes of chest pain and pressure, which occur to 3 or 4 times a month and could last between 5 and 25 minutes, she had to sit down and catch her breath. (Tr. 676). The ALJ then engaged in a detailed discussion of Claimant's medical treatment for her heart issues. (Tr. 677–80). Ultimately, however, the ALJ found that the evidence of her heart issues

did not support the degree of her claimed limitations. Claimant does not argue that the ALJ erred in evaluating the evidence of her heart impairments.

The ALJ also acknowledged Claimant's testimony that her primary problem was her joint and muscle pain, which she testified limited her to lifting 10 pounds, caused her pain when walking around the block, and demanded that she sit every hour at work for 15 minutes. (Tr. 676). The ALJ also noted Claimant's later testimony that she had issues with her right shoulder, left wrist, and right hand, could only lift only two to three pounds, could walk 100 feet at the most, and could lift her arms to her shoulders before they began to shake. (Tr. 676). The ALJ also observed that some evidence supported Claimant's allegations, including imaging evidence showing degenerative changes in her lower and mid back, as well as her neck. (Tr. 681, citing Tr. 409–11, 548–54, 558–60, 1078–79). The ALJ pointed to evidence showing that Claimant demonstrated reduced active range of motion in her neck, and that she had mild tenderness to palpation in her left sacroiliac joint area. (Tr. 682, citing Tr. 449, 1052, 1060).

Based on his evaluation of the evidence and Claimant's complaints, the ALJ tempered the more restrictive prior administrative findings from State agency reviewing medical consultants Dr. Neely and Dr. Coffman, who found that Claimant could perform the full range of medium and light work, respectively. (Tr. 686–87, citing Tr. 66–85, 88–119). *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (ALJ does not err by considering a medical opinion adverse to claimant, and then electing to temper its extremes for claimant's benefit). Instead, the ALJ found that Claimant could perform a reduced range of light work, which was a limiting RFC; even a wide range of light work "involves only minimally strenuous activities." *Kirkpatrick v. Colvin*, 663 F. App'x 646, 649 (10th Cir. 2016) (unpublished).

Further, the ALJ explained in detail that the evidence did not support any further restrictions. For example, the ALJ explained that, while some evidence supported Claimant's complaints of neck pain, no evidence showed that she had radiculopathy in her neck, and imaging evidence did not demonstrate nerve root impingement. (Tr. 681, citing Tr. 397–504, 517–622, 633–59, 1016–1106, 1121–33). The ALJ explained that the evidence generally did not show abnormal findings in her shoulder or her hips, aside from the mild findings the ALJ explicitly discussed. (Tr. 682, citing Tr. 397–504, 517–622, 633–59, 1016–1106, 1121–33). The ALJ noted that, despite her complaints of pain and her testimony that she was in virtually constant pain, she was rarely if ever noted to be in acute distress, nor did she exhibit abnormal musculoskeletal or neurological findings on examination. (Tr. 683–84, citing Tr. 397–504, 517–622, 633–59, 1016–1106, 1121–33). Therefore, the evidence did not support Claimant's allegations regarding the severity of her impairments, but the ALJ nonetheless gave her the benefit of the doubt and limited her to a reduced range of already minimally strenuous activities.

The ALJ provided over ten pages of single-spaced analysis, during which he extensively discussed Claimant's testimony and reports and how the objective evidence related to, supported, and did not support her allegations. (Tr. 676–88). Such a thorough examination of the evidence, explicitly linked to Claimant's various allegations, cannot in good faith be called "conclusions without an explanation." *See* Pl.'s Br. at 9. In fact, the ALJ's explanation for how he arrived at Claimant's RFC, and indeed the decision as a whole, exceeded the "reasonably discernible" bar required for upholding the Commissioner's decision. *Garland v. Dai*, 141 S. Ct. 1669, 1679 (2021) ("[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." (citations and internal quotation marks omitted))

Considering the medication Claimant received, 20 C.F.R. § 404.1529(c)(3)(iv), the ALJ noted that, despite her allegations that her muscle and joint pain were the reasons she could not

work full time, for much of the relevant period Claimant received no treatment other than intermittently prescribed non-narcotic pain medications. (Tr. 681). The ALJ later noted that Claimant received other pain medications and injections (not more aggressive interventions such as surgery) and reported that her medications helped her. (Tr. 682–83, citing Tr. 1050, 1057). Considering treatment other than medication that Claimant received, 20 C.F.R. § 404.1529(c)(3)(v), the ALJ found that Claimant had muscle spasm and tightness, which was resolved by osteopathic manipulative treatment, (Tr. 683, citing Tr. 1086–87, 1102–03).

An ALJ also considers whether there are inconsistencies between a claimant's reported symptoms and other evidence, such as when a claimant reports more severe symptoms to the agency than she reports to medical providers. 20 C.F.R. § 404.1529(c)(4); *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995). Here, as noted by the Commissioner, the ALJ found that Claimant reported she could not receive surgery for her musculoskeletal issues because of her heart conditions, but the evidence showed that she was cleared for certain procedures. (Tr. 681, citing Tr. 1005, 1093, 1104). The ALJ further noted that Claimant reported "bone-on-bone" degenerative changes, which was not borne out in the imaging evidence. (Tr. 681, citing Tr. 409–11, 548–54, 1078–79).

## Conclusion

In short, some evidence was suggestive of greater limitations and some evidence was suggestive of lesser limitations. The ALJ as factfinder reasonably resolved those inconsistencies. The ALJ found that Claimant was not disabled prior to February 6, 2022, issuing a partially unfavorable decision because she retained the residual functional capacity (RFC) to perform work existing in significant numbers in the national economy prior to that date. Claimant was categorized as a younger individual prior to that time. On February 6, 2022, Claimant's age

category changed to an individual of advanced age (20 CFR 404.1563 and 416.963), and transferability of job skills became material to the determination of disability by the ALJ. The ALJ found that beginning on February 6, 2022, Claimant has not been able to transfer job skills to other occupations, and therefore became disabled on that date. The Court finds substantial evidence supports the ALJ's decision.

Accordingly, the decision of the Commissioner is hereby **AFFIRMED.**

**IT IS SO ORDERD this 31st day of July, 2024.**

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**